UNITED STATES of America, Appellant,

v.

Francis P. LONG a/k/a "Red" and John Hackett a/k/a "Jack".

No. 75–2420.

United States Court of Appeals, Third Circuit.

Argued March 26, 1976.

Decided April 23, 1976.

1079, 31 L.Ed.2d 263 (1972); 2A J. Moore, Federal Practice ¶ 12.08, at 2266–67 (2d ed. 1975).

Blair A. Griffith, U. S. Atty., James E. Roark, James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellant.

Frederick E. Baxter, Robert J. Cindrich, McVerry, Baxter, Cindrich, Loughren & Mansmann, Pittsburgh, Pa., for appellees.

Before SEITZ, Chief Judge, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The Government statutorily appeals under 18 U.S.C. § 3731 (1971)[1] from an order of the United States District Court for the Western District of Pennsylvania. The order, *inter alia,* dismissed two counts of an indictment and suppressed certain evidence. We reverse and remand.

The criminal proceedings of which this case is a part began with information received by federal authorities that Francis P. Long, president of Long Hauling Company, was making "payoffs" to councilmen for the Borough of North Braddock, Pennsylvania, in return for the borough garbage removal contract, in violation of the Hobbs Act, 18 U.S.C. § 1951 et seq. (1971). Based on a tip that one of the illegal payments from Long was scheduled for a particular date and time, an FBI agent arranged to intercept the truck bearing the recipients from Long's place of business.

One of the riders of the truck was John Hackett, a borough councilman, the other defendant herein. A search of Hackett's person pursuant to a search warrant revealed nine envelopes, each containing $240 in cash, which were seized forthwith.

The five-count indictment in the instant case does not concern the alleged payoffs *per se* but stems from the grand jury investigation which was initiated thereafter. The indictment charges Long and Hackett with various actions to obstruct that investigation, but only the last two perjury counts of the indictment are before us on the Government's appeal. They charge each defendant separately with committing perjury before the grand jury in violation of 18 U.S.C. § 1623 (1971).[2] The district

1. 18 U.S.C. § 3731 provides in relevant part:
   An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:
   From a decision or judgment setting aside, or dismissing any indictment . . . or any count thereof . . . ..
       \*    \*    \*    \*    \*    \*

   From an order, granting . . . a motion to suppress evidence, made before the trial of a person charged with a violation of any law of the United States . . . ..

2. 18 U.S.C. § 1623 provides in pertinent part:
   (a) Whoever under oath in any proceeding before . . . any . . . grand jury of the United States knowingly makes any false material declaration . . . shall be fined

court judge concluded that the two counts were insufficient and dismissed them.

The district judge also granted Long's motion to suppress evidence seized from Hackett under the search warrant on the ground that the underlying affidavit failed to allege the degree of impact on interstate commerce required to establish a probable violation of the Hobbs Act.

The Government has appealed from those portions of the order entered by the district court judge which grant defendants' motions.

## I.

■ The interstate commerce aspect of the Hobbs Act was the subject of a recent en banc decision of this court. *United States v. Mazzei,* 521 F.2d 639 (3d Cir. 1975), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385, 44 U.S.L.W. 3344 (1975). *See also United States v. Hilton,* 534 F.2d 556 (3d Cir. 1976). Chief Judge Seitz, writing for the majority in *Mazzei,* quoted from *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252, 255 (1960), to the effect that Congress intended, by enacting the Hobbs Act, to punish interference with interstate commerce to the fullest extent possible under its constitutional power.

In keeping with Congressional intent, this court's position is:

> [W]here the resources of an interstate business are depleted or diminished "in any manner" by extortionate payments, the consequent impairment of ability to conduct an interstate business is sufficient to bring the extortion within the play of the Hobbs Act.

521 F.2d at 642. Previously in *United States v. Addonizio,* 451 F.2d 49 (3d Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), this court had

held that an activity whose "natural effect" was to burden interstate commerce met the commerce element of the Hobbs Act.

By holding that the Hobbs Act prohibits "only conduct which actually 'obstructs, delays, or affects commerce or the movement of any article or commodity in commerce' rather than the indirect relationship to commerce such as was involved in *Kirschbaum Co. v. Walling,* 316 U.S. 517, 521–23, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638, 1646 (1942)," the district court in the instant case misconstrued the Hobbs Act's interstate commerce requirement. When viewed by the proper, sound standard reiterated in this court's *Mazzei* decision, the affidavit underlying the search warrant is adequate.

■ The FBI agent averred in the affidavit:

> Long Hauling Company . . . is known to me to be an enterprise engaged in interstate commerce; furthermore, Long Hauling Company is known to me to purchase equipment and services in interstate commerce to be used in its conduct of the trucking business.

These averments, coupled with the averment that in behalf of the company Long "pays approximately fifty ($50.00) dollars per month to each council member," are adequate to establish the diminution of assets of a company engaged in interstate commerce, within the ambit of *Mazzei.*

Long urges that, even if the affidavit sufficiently alleges an impact on commerce, it is deficient in other aspects.[3] Therefore, he argues, the evidence should be suppressed in any event.[4] Long raised his objections to the affidavit in his motion to suppress in the district court. The district court, however, found that "the allegations of the affidavit (unsealed by order of this Court) as to credible information were adequate . . .."

---

not more than $10,000 or imprisoned not more than five years, or both.

**3.** Long contends that the reliability of the confidential informant was not sufficiently established, that the informant did not have firsthand information, that the informant's statements were not adequately corroborated, and

that the remaining allegations of the affidavit do not establish criminal activity.

**4.** We do not discuss the threshold question of Long's standing to assert a fourth amendment violation because that issue has not been raised in this appeal.

## II.

The fourth and fifth counts of the indictment, which the district judge dismissed, charged Long and Hackett with perjury before the grand jury. The main portions of Long's testimony are as follows:

[Long] I have never been paying off any bribes to any community that I am doing business with.

  * * * * * *

Q: Do you deny making payoffs or bribes to the councilmen of North Braddock?

A: Yes.

  * * * * * *

Q: And you did not give two thousand one hundred sixty dollars in nine envelopes of two hundred and forty dollars each, a piece to the nine councilmen of North Braddock for a payoff or bribe?

A: No payoffs; no bribe; absolutely not.

  * * * * * *

Q: So, to sum it up, it is your testimony that you agreed to buy 2,160 [raffle tickets] for the Democratic Committee of the Borough of North Braddock?

A: That's right, the Democratic Party.

Hackett testified to the same effect:

Q: Isn't it a fact that the $240 that was in each of those envelopes was a kickback being paid to a councilman of North Braddock Borough for Long's Garbage Hauling business?

[Hackett] No, sir.

  * * * * * *

Q: Your answer is "no"?

A: That's right, because I was selling him raffle tickets.

  * * * * * *

Q: And you have never received any money for payoffs from Mr. Long?

A: No.

  * * * * * *

Q: Kickbacks or payoffs.

A: I just got this money for the raffle. I just got it for the raffle.

Q: This was not a payoff or kickback for the garbage contract?

A: No.

The indictment charges that each defendant at the time of the testimony knew the money was a bribe or payoff. The district court dismissed both counts on two separate grounds.

First, the court concluded that the questions called for legal conclusions as to what constituted a "bribe," "kickback," or "payoff," "with respect to which lay witnesses can not be expected to be informed." In addition, the court premised its dismissal on "all the reasons set forth by Judge Snyder in *U. S. v. Scarpino,* Cr.No. 75–142 (July 16, 1975) [W.D.Pa.]."

██ We disagree with the district court's characterization of the terms used by the prosecutor as esoteric and fraught with arcane legal meanings. Unfortunately, "bribes," "kickbacks," and "payoffs" are routinely reported in the media; they are not terms of art, they are words of common currency which form part of the vocabulary of almost any American in his teens or older. Regrettably, they recur nightly in the television fare of the country.

That the prosecutor, Long, and Hackett understood each other is evidenced by the defendants' unequivocal denials that their behavior merited the labels in question. At no time in the course of their testimony, did Long or Hackett manifest the slightest uncertainty or confusion as to the meaning of these terms. Indeed, the defendants themselves used the terms in their vehement denials. The record reveals a meeting of the minds on the definition of the words. *United States v. Paolicelli,* 505 F.2d 971 (4th Cir. 1974).

Moreover, the defendants did not confine themselves to denying the accusations of the prosecutor. They affirmatively characterized their transaction as the purchase and sale of raffle tickets when, as the Government alleges, they knew the money was in return for the garbage removal contract. If Hackett and Long in fact fabricated the testimony about the raffle tickets, it was fully as perjurious under 18 U.S.C.

§ 1623 as was their alleged negation of the truth. *See United States v. Turcotte,* 515 F.2d 145 (2d Cir. 1975).

We recognize that for Long or Hackett to be convicted of perjury, the finder of fact will be required to determine that "the question *as the defendant understood it* was falsely answered." *United States v. Chapin,* 515 F.2d 1274, 1280 (D.C. Cir. 1975). Nevertheless, we may not dismiss a charge of perjury when it is entirely reasonable to expect a defendant to have understood the terms used in the questions.

In *United States v. Bergman,* 354 F.2d 931 (2d Cir. 1966), the court upheld a perjury conviction because there was sufficient evidence from which the jury could have concluded that the defendant, who denied taking "a kickback of any kind," understood that his actions constituted a kickback. Whether the defendants in the instant case understood the terms used by the prosecutor is similarly a question of fact which should not have been decided on a motion to dismiss the indictment.

We turn to the other ground for dismissal cited by the district judge, i. e., "all the reasons set forth" in the *Scarpino* opinion. In *Scarpino,* a case related to the one sub judice, the defendant answered a question put by the prosecutor in a manner which was misleading albeit literally true.[5] Hence, under *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the defendant had not committed perjury for purposes of the federal statute. "[I]f a defendant is never asked the crucial question, he cannot be indicted for an answer which might only imply an untruth." *U. S. v. Scarpino, supra,* at 3–4.

In the instant case, Long and Hackett answered responsively and unequivocally. The Government claims the answers were false, not literally true or ambiguous. Thus, both *Bronston* and *Scarpino* are inapposite. *United States v. Braasch,* 505 F.2d 139, 148 (7th Cir. 1974).

We hold that the district court erred when it dismissed the perjury counts of this indictment.

We will not here consider Long's argument that he was not afforded adequate *Miranda* warnings as a "putative defendant" before the grand jury. *See United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974), *cert. granted,* 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669, 43 U.S.L.W. 3515 (1975). The issue is not part of the Government's appeal under 18 U.S.C. § 3731, and the statute does not provide for cross-appeals. *See United States v. Finn,* 502 F.2d 938, 940 (7th Cir. 1974).

That portion of the order of the district court suppressing the evidence obtained pursuant to the search warrant and dismissing counts IV and V of the indictment will be reversed and the case remanded for further proceedings.

---

5. The defendant had denied informing a councilman that a sum of money was "from Long Hauling." Since the defendant had actually identified the money as coming "from Long," not from the Long Hauling Company, his testimony was literally true, although unresponsive.