**UNITED STATES of America, Appellee,**

v.

**William H. ZACHER, Appellant.**

**No. 158, Docket 78–1194.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1978.

Decided Oct. 17, 1978.

William H. Gardner, Buffalo, N. Y., for appellant.

Carol C. White, Asst. U. S. Atty., W. D. N. Y. (Richard J. Arcara, U. S. Atty., Hugh B. Scott, Asst. U. S. Atty., W. D. N. Y., Buffalo, N. Y. of counsel), for appellee.

Before OAKES, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Appellant William H. Zacher and his father were partners in ownership of the Manhattan Manor Nursing Home in Buffalo, New York. Zacher held the position of Nursing Home Administrator there under a license issued by the State of New York. In 1973, the year the Home opened, Zacher was approached by several people interested in placing in the Home relatives due to be released from local hospitals. At the time, Zacher was charging his private patients $29.00 per day. Some of the patients

for whom admission was sought were eligible for Medicaid. Zacher calculated (accurately) that Medicaid would reimburse him at a rate of about $25.00 per day. In the four instances relevant to this appeal, after discussions with their respective families, Zacher admitted the patients on the understanding that each family would pay him $4.00 per day as a "supplement" to the Medicaid payments. These supplementary payments were generally made monthly, by check, until the fall of 1973. At that time Zacher informed the families that payments were no longer to be made by check at the Home's office but were to be made in cash to Zacher personally.[1] Private patients continued to pay by check. No receipts were given for the cash payments. In the fall of 1974, Zacher informed the families that no more payments from them would be required.[2]

Zacher was convicted of four counts of receiving bribes in connection with the provision of Medicaid services, in violation of 42 U.S.C. § 1396h(b) (1972). In the relevant period, 1973–74, this statute read as follows:

(b) Whoever furnishes items or services to an individual for which payment is or may be made in whole or in part out of Federal funds under a State plan approved under this subchapter and who solicits, offers, or receives any—

(1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment, or

(2) rebate of any fee or charge for referring any such individual to another person for the furnishing of such items or services

shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both.[3]

1. One of the four patients died before the switch to cash payments was made. Another did not enter the Home until December, 1973, and thus his family paid cash from the day of his admission. Although the indictment charged Zacher with accepting bribes from five families, the jury acquitted Zacher on the fifth count.

2. At trial, Zacher testified that before making arrangements for supplementary payments he had asked his attorney, Thomas Webb, to check on the legality of such a plan. Webb testified that an unidentified employee of the Erie County office of the Department of Social Services told him over the telephone that such payments would be permissible if made by families but not if made by patients. Zacher stated at trial that he relied on Webb's assurances until the legality of such payments was questioned at a seminar he attended in late 1974. A government rebuttal witness from the same office of the Department of Social Services testified that she had told Zacher on the telephone that the Medicaid rate was all-inclusive and that he could not accept money over and above the Medicaid reimbursement. She testified that she believed this conversation took place in the fall of 1973 but that she was not certain and had no record of the call.

3. In 1977, Congress added a new subsection (d) to § 1396h:

(d) Whoever knowingly and willfully—
(1) charges, for any service provided to a patient under a State plan approved under this subchapter, money or other consideration at a rate in excess of the rates established by the State, or
(2) charges, solicits, accepts, or receives, in addition to any amount otherwise required to be paid under a State plan approved under this subchapter, any gift, money, donation, or other consideration (other than a charitable, religious, or philanthropic contribution from an organization or from a person unrelated to the patient)—
(A) as a precondition of admitting a patient to a hospital, skilled nursing facility, or intermediate care facility,
(B) as a requirement for the patient's continued stay in such a facility,
when the cost of the services provided therein to the patient is paid for (in whole or in part) under the State plan,
shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
Pub.L. 95–142, § 4(b), 91 Stat. 1181 (1977). Subsection (b) was amended at the same time. It now prohibits the giving or receipt of any "remuneration (including any kickback, bribe, or rebate)" in return for purchasing, or for making referrals or recommendations regarding the purchase of, goods or services to be paid for under the State plan.

Our decision as to the criminality of Zacher's receipt of these payments under the old version of § 1396h(b), while of great importance to Zacher, should have no impact on the liability

This appeal turns on the question of whether the payments received by Zacher can be considered bribes within the meaning of that statute.[4] We hold they cannot. In view of our decision on this issue, we need not reach the other questions raised by appellant.[5]

At trial, the government called three witnesses active in the administration of the Medicaid program in New York State and in Buffalo. None of these witnesses was able to point to any federal, state or county statute, rule or regulation that might shed light on the intended scope of the term "bribe" in § 1396h(b).[6] Because the statute itself does not define the term "bribe" we must look to similar statutes, the common law, and common sense for aid in its interpretation. In doing so, we follow the reasoning of Justice Jackson in *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952):

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind un-

less otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

Common law bribery has been defined as "the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done or with the corrupt intent to influence the action of a public official or of any other person professionally concerned with the administration of public affairs." 12 Am.Jur.2d Bribery § 2 (footnotes omitted). *See also United States v. Brecht,* 540 F.2d 45, 48 (2d Cir. 1976). *Cf. United States v. Worrall,* 2 U.S. (2 Dall.) 384, 1 L.Ed. 426 (1798); 3 R. A. Anderson, Wharton's Criminal Law & Procedure, Bribery, §§ 1380–81 (1957); Black's Law Dictionary 239 (4th ed. 1968). Most American jurisdictions have enacted statutes which cover the corrupt influencing of public officials, and many have extended the bribery prohibition to cover corrupt payments to voters, athletes, union representatives and commercial employees. 12 Am.Jur.2d Bribery § 3.

The federal statute entitled "Bribery of public officials and witnesses" imposes criminal penalties on anyone who "*corrupt-*

---

of nursing home operators now receiving or soliciting similar payments.

**4.** The grand jury indictment originally charged appellant with receiving "kickbacks and bribes" in violation of the cited statute. After presentation of the government's case, Judge Elfvin found, and the government conceded, that there was a serious question as to whether any showing of a kickback had been made. The kickback charges were dismissed and all references to kickbacks in the indictment were excised before the case went to the jury.

After the jury returned its verdict, Judge Elfvin recused himself from further proceedings in the case. Chief Judge John T. Curtin assumed responsibility for the case. He sentenced Zacher to a two year probationary period conditioned on restitution of payments received and fined him $10,000. Judge Elfvin's recusal is not an issue on this appeal.

**5.** Appellant argues among other things, that the jury was improperly charged as to the elements of the crime of bribery under the statute. In view of our holding that the case should not have gone to the jury, examination of the court's instructions would be superfluous.

**6.** Section 1396a(14)(B)(i) of the statute, effective as of January 1, 1973, and still in force, requires state plans to provide that, in the case of individuals meeting certain income and resource requirements, no enrollment fee, premium, or similar charge will be imposed for skilled nursing facility services and that, in the case of individuals not meeting the income and resource requirements, there may be imposed such a charge "which (as determined in accordance with standards prescribed by the Secretary) is related to the individual's income . . . ." However, Section 1396a, which is clearly directed to the states, rather than to participating individuals, provides for no criminal penalties. Section 1396h, which is addressed to individuals and which clearly establishes criminal penalties for its violation, contains no cross-reference to § 1396a and prohibits, by its terms, only bribes, kickbacks and rebates. Thus § 1396a, which is not relied upon by the government, does not aid in the determination of the criminality of Zacher's actions.

*ly* gives, offers or promises anything of value to any public official" with the intent to influence any official act or to influence the official to commit a fraud on the United States or to violate his lawful duty. 18 U.S.C. § 201(b) (emphasis added). Parallel provisions cover the public official who *"corruptly"* solicits or receives anything of value in return for being so influenced. 18 U.S.C. § 201(c) (emphasis added). Section 201 provides for lesser penalties in cases where anything of value is given to a public official "for or because of any official act performed or to be performed." 18 U.S.C. §§ 201(f) and (g). Although both categories of offenses are prohibited in the "bribery" section, § 201, the federal judiciary has characterized the first group of offenses, requiring a corrupt intent, as bribery, and has referred to the lesser included offense, not requiring a corrupt intent, as the giving or receiving of an illegal gratuity. *See, e. g., United States v. Evans,* 572 F.2d 455, 480 (5th Cir. 1978); *United States v. Crutchfield,* 547 F.2d 496, 498 (9th Cir. 1977); *United States v. Brewster,* 506 F.2d 62, 67–76 (D.C. Cir. 1974); *United States v. Harary,* 457 F.2d 471, 472 (2d Cir. 1972); *United States v. Egenberg,* 441 F.2d 441, 443 (2d Cir.), *cert. denied,* 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971); *United States v. Barash,* 412 F.2d 26, 37 (2d Cir.), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); *United States v. Cohen,* 387 F.2d 803, 806 (2d Cir. 1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1197, 20 L.Ed.2d 95 (1968). *See also United States v. Irwin,* 354 F.2d 192, 196 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966) (Congress has power to outlaw unauthorized payments to public officials in absence of proof of corruption or breach of duty). The many cases drawing the bribe-gratuity distinction augment our understanding of the scope of the word "bribe" as used by the judiciary. Our examination of this and other federal statutes, however, has failed to uncover any uniform definition of the term "bribe" as used in the federal code.[7]

The common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty. As this Court observed in *United States v. Esperdy,* 285 F.2d 341, 342 (2d Cir.), *cert. denied,* 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961):

> There can be no question but that any crime of bribery involves moral turpitude . . . . Bribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty.

In interpreting the federal statute just cited, we have characterized the bribery at which it aims in similar terms.

> The evil sought to be prevented by the deterrent effect of 18 U.S.C. § 201(b) is the aftermath suffered by the public when an official is corrupted and thereby perfidiously fails to perform his public service and duty.

*United States v. Jacobs,* 431 F.2d 754, 759 (2d Cir. 1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971).

When courts have sought the meaning of the term "bribe" in everyday rather than legal usage, *see United States v. Long,* 534 F.2d 1097, 1100 (3d Cir. 1976) ("part of the vocabulary of almost any American in his teens or older"), the same emphasis on corruption and breach of trust or duty has been apparent. In interpreting the use of the word bribery in Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 941, 18 U.S.C. § 1961 *et seq.* (1970), for example, the United States District Court for the Western District of Pennsylvania found that the word was used:

> in its ordinary meaning. The term is familiar in common speech. Its basic feature is the prostitution of a public trust for private gain.

---

**7.** *See, e. g.,* prohibitions against the giving or receipt of things of value in situations involving witnesses, 18 U.S.C. §§ 201(d) and (e); meat inspectors, 21 U.S.C. § 622; revenue officers, 26 U.S.C. § 7214(a)(2); bank examiners, 18 U.S.C. §§ 212–13; and sporting contests, 18 U.S.C. § 224.

*United States v. Forsythe,* 429 F.Supp. 715, 721 (W.D.Pa.), *rev'd on other grounds,* 560 F.2d 1127 (3d Cir. 1977). In a footnote the court indicated that in ordinary speech the expression "commercial bribery" also denotes violation of a trust or duty—but of a private rather than a public nature. 429 F.Supp. at 721 n. 5.

Thus, whether they view it as a term of art or a term of common usage, courts have consistently understood the word "bribe" to encompass acts that are *malum in se* because they entail either a breach of trust or duty or the corrupt selling of what our society deems not to be legitimately for sale—the Senator's vote, the citizen's ballot, the labor leader's negotiating position or the employee's actions taken on behalf of an employer. It is this element of corruption that distinguishes a bribe from a legitimate payment for services.

Zacher charged his private patients $29.00 per day. If a patient were covered by an insurance policy which would pay $25.00 per day for nursing home care, an arrangement between the patient's family and Zacher for payment of $4.00 per day could not reasonably be characterized as a bribe. Nevertheless, it would clearly have as its purpose influencing Zacher to admit the patient and provide the requested services. The receipt of·supplemental payments when a patient is eligible for Medicaid rather than private insurance similarly would not, without more, constitute the taking of a bribe. Therefore, even if Congress had intended to outlaw such practices, it did not succeed in doing so by passage of § 1396h(b).

In fact we do not make such an assumption as to the intent behind § 1396h(b) (1972). The legislative history is sparse and inconclusive.[8] However the design of the statute itself may be taken as indicative of the scope Congress intended the provision to have. A statutory term may gather meaning from the words around it. *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961). Section 1396h(b) (1972) made criminal transactions involving kickbacks, bribes and rebates in connection with the furnishing of Medicaid services. Kickbacks, rebates and bribes cover a variety of transactions which, while *not* prohibited by 18 U.S.C. § 201 unless a public official is involved, would involve the misapplication of federal funds. As we understand the terms, they each involve a corrupt payment or receipt of payment in violation of the duty imposed by Congress on providers of services to use federal funds only for intended purposes and only in the approved manner.[9] The payments to Zacher did not increase the cost to the government of patient care, decrease the quality of patient care purchased by the government or involve the misapplication of government funds.

Although it seems likely that Zacher himself at some point decided that the supplemental payments were illegal or questionable, his decision to continue the practice while switching to a cash only basis, while it may do him no credit, cannot transform his actions into a crime.

The government, in its request to charge, conceded that something extra was needed to transform a payment into a bribe, when it proffered as a definition of a bribe: something given or offered to someone, in a position of trust, to induce him to act dishonestly. The jury then was permitted to convict Zacher if it found that he knowingly received a supplemental payment which influenced him to provide nursing home care for a Medicaid patient even though

---

**8.** The 1977 Congress that passed new subsection (d), *see* note 3, *supra,* was itself in disagreement about the intended scope of § 1396h(b) (1972). *Compare* Cong.Rec. H9943–44 (daily ed. Sep. 23, 1977) (remarks of Rep. Pepper) *with id.* H9945 (remarks of Rep. Rogers).

**9.** "Rebate" is defined in § 1396h although "bribe" and "kickback" are not. The latter two terms are considered common words. *United States v. Long,* 534 F.2d 1097, 1100 (3d Cir. 1976); *Boehm v. United States,* 123 F.2d 791, 812–13 (8th Cir. 1941), *cert. denied,* 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200 (1942). Our interpretation of § 1396h is in line with common usage and, in our view, makes logical the grouping together of the three practices in one prohibition.

there was nothing corrupt about accepting the patient in the first place. We do not question the power of Congress to make such behavior criminal, and it has recently done so with clarity. *See* note 3, *supra.* The issue is whether by prohibiting the receipt of "bribes" in connection with the furnishing of nursing home services to Medicaid patients Congress had done so in the statute under which Zacher was convicted. Because there is no showing that "bribe" in § 1396h(b) (1972) was intended to encompass more than at common law or in common usage, we hold that Congress did not reach the receipt of payments such as those accepted by Zacher.

We end our analysis where we began it—with *Morissette v. United States, supra:*

> The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.

342 U.S. at 263, 72 S.Ct. at 249 (footnote omitted).

Judgment reversed. Case remanded with instructions to dismiss the indictment.