**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman RUTTENBERG, et al.,**
**Defendants-Appellants.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**ROYAL FONTANA NURSING CENTER,**
**INC., Defendant-Appellant.**

**Nos. 79-2440, 79-2449.**

United States Court of Appeals,
Seventh Circuit.

Argued April 29, 1980.

Decided July 9, 1980.

---

Alan O. Amos, Collins & Amos, Marilee Roberg, Pedersen & Houpt, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., Michael Siegel, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Circuit Judge, MARKEY, Chief Judge,[*] and CUDAHY, Circuit Judge.

MARKEY, Chief Judge.

Norman Ruttenberg, Dan Lipman, Hyman Naiman, Sam Weintraub, Emanuel Ray, Theodore Dolitsky and Royal Fontana Nursing Center, Inc. appeal the denial by the United States District Court for the Northern District of Illinois of a Writ of Error Coram Nobis vacating their earlier sentences and remitting their fines with statutory interest. We *affirm*.

## Background

In 1976 appellants were charged with violations of 18 U.S.C. § 1341 (1972)[1] and 42 U.S.C. § 1396h(b)(1) (1972) (amended 1977).[2] The indictments of the individual appellants alleged in summary that Dolitsky provided drugs and other pharmaceutical supplies to nursing homes owned by the individual defendants, that Dolitsky paid monthly "fees" to the defendants "for the opportunity to provide drugs and pharmaceutical services," that the fees were paid through "Multicare Management Co." (MMC), were described as "fees for consulting services," and were distributed by MMC to the nursing home owners in amounts totalling over $42,000.

---

[*] Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals, sitting by designation.

1. § 1341. Frauds and swindles.

    Whoever, having devised or intending to devise any scheme or artifice to defraud . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. The operative language of § 1396 at the time of indictment read:

    § 1396h. Offenses and penalties.

    (b) Whoever furnishes items or services to an individual for which payment is or may be made in whole or in part out of Federal funds under a State plan approved under this subchapter and who solicits, offers, or receives any—

    (1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment,

    shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

The information filed against Royal Fontana Nursing Center charged it with soliciting and receiving bribes and kickbacks from Glick Drug Company in connection with Glick's furnishing of drugs and pharmaceutical services.

In late 1976 and early 1977 appellants plead guilty and were sentenced to terms of imprisonment or probation and fined substantial sums. The sentences have been served, the periods of probation have expired, and the fines have been paid.

In May and June of 1979 appellants filed motions in the District Court, under 28 U.S.C. § 1651(a) (1976),[3] for Writs of Error Coram Nobis, based on assertions that the indictments failed to state an offense cognizable under either 18 U.S.C. § 1341 or 42 U.S.C. § 1396h(b)(1). Appellants relied on *United States v. Zacher*,[4] 586 F.2d 912 (2d Cir. 1978) and *United States v. Porter*,[5] 591 F.2d 1048 (5th Cir. 1979). On September 27, 1979, District Judge John Powers Crowley denied the Royal Fontana motion, and on November 13, 1979, District Judge Frank J. McGarr denied the Ruttenberg, et al. motion.

### Issue

The dispositive issue is whether the indictments and information filed against appellants failed to charge a crime under the applicable statutes.

**3.** § 1651. Writs

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**4.** In *Zacher*, a nursing home operator who took from his patients $4.00 per day more than the maximum paid by Medicaid was tried and convicted under 42 U.S.C. § 1396h(b) (1972) of taking bribes. The court of appeals defined bribe and kickback as involving "a corrupt payment or receipt of payment in violation of the duty imposed by Congress on providers of services to use federal funds only for intended purposes and only in the approved manner." *United States v. Zacher*, 586 F.2d at 916. Viewing the payments to defendant as indistinguishable from payments by patients over and

### OPINION

Having plead guilty, appellants have admitted the allegations in the indictments and information and have waived all non-jurisdictional defects therein other than sufficiency. *United States v. Michigan Carton Co.*, 552 F.2d 198, 202 (7th Cir. 1977). Thus the issue here is solely whether the indictments and information sufficiently allege the crimes of offering and receiving a kickback under § 1396h(b)(1). *United States v. Hancock*, 604 F.2d 999, 1001 (7th Cir. 1979).

Appellants say, "In both *Zacher* and *Porter*, the government paid only the amounts it had fixed for the services or supplies provided, no false bills were submitted, no public officials were bribed or otherwise involved, and no statute or regulation required the doctors or nursing home owners to deal with different laboratories or pharmacies or to use different services or supplies than they did," and that the same is true here. In so saying, appellants misconstrue their position. Nothing in the present indictments and information, or in the statute, refers in any manner to governmentally fixed prices, or false bills, or public officials, or requirements for dealing with multiple suppliers, nor are any of those elements established as facts on the record.[6] A defendant who has plead guilty may not "transcend the four-corners of the indictment in order to demonstrate its insufficiency." *United States v. Di Fonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979).

above those paid by private insurance companies, the court found no corruption or breach of duty and reversed the conviction.

**5.** In *Porter*, defendants were tried and convicted of receiving kickbacks or bribes under 42 U.S.C. § 1395nn(b)(1). Defendants referred blood samples to a laboratory for testing and were paid for the referral a fee, called by the defendants a "handling fee." The court reversed, finding no basis in law for characterizing those payments as bribes and defining a kickback as the "return to an *earlier possessor* of part of a sum received," *United States v. Porter*, 591 F.2d at 1054 (emphasis in original).

**6.** The sole basis for allegations of fixed prices and no increased cost to the government lies in comments of counsel at a pre-sentence hearing.

■ Thus it cannot be contested that the indictments and information sufficiently alleged kickbacks. The indictments state that Dolitsky "would and did pay a monthly kickback or bribe to [MMC] for the opportunity to provide drugs and pharmaceutical services to patients at [several nursing homes owned by appellants] . . ." and that MMC distributed the sums paid to those nursing homes, the payments being disguised as debts owed by MMC. The information charged "Royal Fontana Nursing Center, Inc. . . . did solicit and receive a kickback and bribe from Glick Drug Company in the amount of $3.00 per month for each public aid patient. . ." Appellants' arguments reduce to an assertion that their admitted actions did not constitute a kickback under the statute. For that purpose, defendants compare their actions with the definition of "kickback" set forth in *Porter*: "the secret return to an *earlier possessor* of part of a sum received." 591 F.2d at 1054 (emphasis in original).[7]

Whatever may be said of that definition, or of the *ratio decidendi* in *Zacher* and *Porter*, the decision and opinion of this court in *Hancock* is controlling in this case. In *Hancock* the defendants plead guilty to one count of an indictment charging violation of 42 U.S.C. §§ 1395nn(b)(1)[8] and 1396h(b)(1) (1972) (amended 1977). Defendants had been paid what they called "handling fees" for referring blood and tissue specimens to the fee-paying laboratory. This court distinguished *Zacher*, where non-corrupt payments were found, saying "In the present case, however, the indictments do allege corrupt payments which were admitted by defendants' pleas." The *Porter* definition of "kickback" was rejected by this court, which adopted as its definition: "'a percentage payment . . . for granting assistance by one in a position to open up or control a source of income,' *Webster's Third New International Dictionary* (1966)," 604 F.2d at 1002. An argument that § 1396h(b)(1) was unconstitutionally vague was rejected, because the statute gives fair notice that defendants' conduct was illegal. *Id.* Viewing the term "kickback" as a commonly understood term encompassing payment for a corrupt purpose, this court held that § 1396h(b)(1) did not omit intent as an element of the crime. To the extent that *Porter* reflected views in conflict with those in *Hancock*, this court expressly declined to adopt the former. *Id.*

■ Appellants say *Hancock* is not controlling because the fee agreement in *Hancock* raised costs to the Medicare system, whereas the government's election to fix the price of drugs and pharmaceuticals precludes that result here. Though the argument, albeit outside the four corners of the indictment/information, may be considered as related to an interpretation of kickback, it does not aid appellants. The government disputes the existence of increased costs in *Hancock*, where, as here, no increased costs were alleged. Appellants rely on this statement by the court in *Hancock*: "[T]he element of corruption is found in this allegation that the defendants received payments in return for their decision to send specimens to Chem-Tech. The potential for increased costs to the Medicare-Medicaid system is plain, where payments for the exercise of such judgments are added to the legitimate costs of the transaction." *United States v. Hancock*, 604 F.2d at 1001.

---

7. No source for this definition is cited in *Porter*. Because actual *possession* of government funds, as distinguished from power to direct their payment, rarely if ever resides in those charged with the conduct of government programs, a literal interpretation of the *Porter* definition of "kickback" would appear to nullify § 1396h(b)(1) in most cases.

8. The operative language of § 1395 at the time of indictment read:

§ 1395nn. Offenses and penalties.

. . . . .

(b) Whoever furnishes items or services to an individual for which payment is or may be made under this subchapter and who solicits, offers, or receives any—

(1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment,

. . . . .

shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

Whether costs were directly and immediately increased by those particular payments, however, is irrelevant. The *potential* for increased costs if such "fee" agreements become an established and accepted method of business is clearly an evil with which the court was concerned and one Congress sought to avoid in enacting § 1396h(b)(1). *Id.*

We think the term "kickback," though apparently originating in the vernacular, was fully understood by the public and the Congress, when the statute was enacted, to mean the transfer back to one having control of the original payment, and that a resulting increase in total cost to the government was not only known to be less common but considered irrelevant.[9]

■ In arguing that the payments here were not of "federal funds" but merely gifts by a grateful Dolitsky from his profits, the individual appellants misread the statute, which describes only the payment *to Dolitsky* as "out of Federal funds." Nothing in the statute requires that a kickback be made of funds to which the payor would not be entitled. Payment of a kickback to those in control of federal funds is all that is required, and such payment meets the *Zacher* definition of corrupt payment as one "in violation of the duty imposed by Congress on providers of services to use federal funds only for intended purposes and only in the approved manner." Returning and receiving a portion of federal funds "for the opportunity to provide drugs and pharmaceutical services" is not a use of federal funds in an approved manner.

Appellants then say the *Hancock* indictments contained more detailed allegations of corrupt payments. The present indictments, however, alleged that payments were made "for the opportunity to provide drugs and pharmaceutical services" and the information alleged that the nursing center "solicited and received" a kickback in connection with the furnishing of drugs to it. By pleading guilty, appellants admitted to all the elements charged, including the element of corrupt payments. Further, the corruption here was the receipt of kickbacks for "the opportunity to provide drugs and pharmaceutical services," a corruption no less than that present in the receipt of kickbacks for "referring Medicare and Medicaid recipients' blood and tissue specimens" in *Hancock.*

We have not been shown, nor do we see, any reason for revising the views expressed in *Hancock*, or for modifying the definition of "kickback" there set forth. Accordingly, the decision denying the requested writs is affirmed.

AFFIRMED.

---

**9.** Though we are concerned with the law, not the ethics of the medical profession, *United States v. Porter*, 591 F.2d at 1058, it should be noted that the law does not make increased cost to the government the sole criterion of corruption. In prohibiting "kickbacks," Congress need not have spelled out the obvious truisms that, while unnecessary expenditure of money earned and contributed by taxpaying fellow citizens may exacerbate the result of the crime, kickback schemes can freeze competing suppliers from the system, can mask the possibility of government price reductions, can misdirect program funds, and, when proportional, can erect strong temptations to order more drugs and supplies than needed. Nor need Congress have spelled out duties, beyond the duty of avoiding receipt and payment of kickbacks. A compassionate people have established and paid for a program of care for the aged among them. Nothing in that program gave to its empowered and privileged conductors carte blanche to manipulate within its fixed costs, as defendants apparently recognized in mislabeling ("fees for consulting services") the payments and in funneling the payments through MMC.