14-1015 (L)
United States v. Tien

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand fifteen.

PRESENT:
> PETER W. HALL,
> DENNY CHIN,
> SUSAN L. CARNEY,
> *Circuit Judges*.

---

United States of America,

> *Appellee*,

> v.                                                                            14-1015, 14-2036, 14-2242

Yang Chia Tien aka Andrew Tien,

> *Defendant-Appellant,*

---

| | |
|---|---|
| **FOR APPELLEE:** | SEAN O'DOWD, Assistant United States Attorney, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, NY. |
| **FOR DEFENDANT-APPELLANT:** | ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial, defendant-appellant Yang Chia Tien appeals his conviction on three counts of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A). In a counseled brief, Tien claims the district court erred in denying his motion for a mistrial based on prejudicial testimony, permitting government witnesses to testify as to their understanding of recorded conversations, denying his motion for acquittal based on insufficient evidence of his predisposition to commit the charged offense, and denying his request for a jury instruction on the lesser included charge of giving an illegal gratuity. Tien additionally submits a *pro se* brief in which he challenges the denial of his post-conviction *pro se* motions to dismiss the indictment and for discovery in anticipation of a § 2255 habeas petition. Tien seeks to have his judgment of conviction reversed and his case dismissed, or, alternatively, his conviction vacated and his case remanded for a new trial. He also argues that on any remand the case should be assigned to a different judge. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Denial of Motion for Mistrial Based on Prejudicial Testimony

"A district court's denial of a motion for mistrial is reviewed for abuse of discretion." *United States v. Rodriguez*, 587 F.3d 573, 583 (2d Cir. 2009). Similarly, this court "review[s] evidentiary rulings only for abuse of discretion. A district court abuses its discretion if it commits an error of law, makes a clearly erroneous assessment of the evidence, or renders a decision that

2

cannot be located within the range of permissible decisions." *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (quotation omitted). Additionally, the district court's denial of a motion for mistrial and its evidentiary ruling both are subject to harmless-error analysis. *See United States v. Apuzzo*, 555 F.2d 306, 308 (2d Cir. 1977) (mistrial); *United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir. 1992) (evidentiary ruling).

"Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U.S. 753, 755 (2000). Defense counsel knew of Tien's prior conversations with informant French Brady about human trafficking, and yet he made the choice to question Investigator Sullivan about Brady's involvement with human trafficking. It was foreseeable that Investigator Sullivan would eventually give a more-detailed answer, which in turn entailed some risk of obliquely suggesting some connection between Tien and human trafficking. Tien cannot elicit testimony and then complain of its prejudicial effect. Furthermore, the statement that was elicited did not directly implicate Tien; Sullivan merely testified that "[*Brady*] *was interested* in [smuggling people over the Canadian border] with Mr. Tien." J.A. at 71 (emphasis added). The jury would have had to infer Tien's possible involvement. *See Rodriguez*, 587 F.3d at 583 (lower risk of prejudice where jury had to make inference in order to connect appellant to potentially prejudicial statement). Finally, this statement was one among a plethora of recordings and other evidence presented over the course of the three-day trial. *See United States v. Ivezaj*, 568 F.3d 88, 98 (2d Cir. 2009) (noting that strength of government's case supports finding harmless error). The district court did not abuse its discretion in overruling Tien's objection to Sullivan's answer or in denying Tien's motion for a

3

mistrial, and any error in that regard was harmless, given the quantity and strength of the evidence against Tien.

## II. Government Witnesses Testifying as to Their Understanding of Recorded Conversations

Tien claims that the district court abused its discretion and committed reversible error when it overruled his objection to government witnesses being permitted to testify as to their understanding of excerpts of recorded conversations with Tien that had been played for the jury. Specifically, the court permitted Investigator Sullivan and Agent O'Brien to testify as to their own understanding of conversations for which they were present, but not as to what they perceived to be Tien's understanding.

This court "review[s] evidentiary rulings only for abuse of discretion." *Komasa*, 767 F.3d at 155.

To support this argument, Tien relies entirely on one case, *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2002). *Dukagjini* involved a drug-conspiracy prosecution in which the government qualified the case agent as its expert witness to explain drug dealers' code and jargon. Although we noted the value of using an expert to explain the meanings of code words, we expressed caution at using the supervising case agent as the expert because those dual roles give the witness "the aura of special reliability and trustworthiness," which "creates a risk of prejudice because the jury may infer that the agent's opinion about the criminal nature of defendant's activity is based on knowledge of the defendant beyond evidence at trial, a risk that increases when the witness has supervised the case." *Id.* at 53 (quotation omitted). Yet, while we ultimately found that the district court in that case erred and ran afoul of Fed. R. Evid. 702 (expert testimony)

4

and 403 (balancing probative value and unfair prejudice) in allowing the case agent/expert witness "to stray from his proper expert function," we "decline[d] to prohibit categorically the use of case agents as experts." *Id.* at 55-56.

*Dukagjini* is inapposite here because the case agents, Sullivan and O'Brien, were not qualified as experts, as Tien concedes. Moreover, the agent in *Dukagjini*, unlike Sullivan and O'Brien, was not a participant in the conversations about which he testified. The testimony to which Tien objected at trial consisted of case agents describing their personal perceptions of meetings and conversations at which they were present. Such testimony is admissible under Fed. R. Evid. 602, which permits a witness to testify about a matter on which she has personal knowledge, and Rule 701, which allows a lay witness to offer non-technical opinion testimony based on her perception where it would be helpful to understanding the witness's testimony or determining a fact in issue. Tien argues that allowing Sullivan and O'Brien to describe their understanding of conversations was especially prejudicial because Tien is not a native English speaker. While it is true that the jury might have relied more heavily on Sullivan and O'Brien's summary testimony because it was difficult to understand Tien, we think that the garbled nature of Tien's recorded speech weighed in favor of allowing Sullivan and O'Brien's summary testimony precisely because it was helpful to the jury. *See* Fed. R. Evid. 701. For these reasons, the district court did not abuse its discretion in overruling Tien's objections to case agents testifying as to their understanding of conversations that had been replayed for the jury.

**III.    Sufficiency of the Evidence of Tien's "Predisposition" to Commit the Charged Offense**

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and "construe[] all permissible inferences in its favor." *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003) (quotation omitted).   Ultimately, we will "uphold a conviction if any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt."   *Id.* (quotation omitted).

Entrapment is an affirmative defense with two elements: (1) "government inducement of the crime, and [(2)] a lack of predisposition on the part of the defendant to engage in the criminal conduct."   *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).   Where a defendant shows credible evidence of inducement, the government has the burden to prove beyond a reasonable doubt that the defendant was disposed to commit the charged crime prior to being contacted by government agents. *Jacobson v. United States*, 503 U.S. 540, 548 (1992).   The government may prove predisposition by evidence of:

> (1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.

*United States v. Brunshtein*, 344 F.3d 91, 101-02 (2d Cir. 2003) (quotation and alteration omitted). Although the government may rely upon "what a defendant says after [being] contacted by agents," *Cromitie*, 727 F.3d at 209, it may do so only to the extent that such evidence is probative of the "[defendant]'s state of mind *prior* to the commencement of the government's investigation,"

6

*Jacobson*, 503 U.S. at 549 n.2. A defendant's "prompt acceptance of [a] government-sponsored invitation" provides sufficient evidence for a jury to find predisposition beyond a reasonable doubt. *United States v. Brand*, 467 F.3d 179, 192-95 (2d Cir. 2006) (citing cases). Here, the government concedes inducement, so we analyze only that evidence which is probative of predisposition.

Tien argues that evidence of his having weekly customers apart from his dealings with Brady, Sullivan, and O'Brien, and charging $30,000 to $70,000 for green cards—as well as evidence of any "ready response" to the agents' inducement—shows at most predisposition to commit the crime of giving an illegal gratuity, and does not show predisposition amounting to the requisite "corrupt intent" for a bribery charge. But the fact that evidence of Tien's prior knowledge of green-card prices and willingness to accept the government's invitation could indicate his predisposition to commit the related crime of giving an illegal gratuity does not mean that the evidence fails to show predisposition to commit bribery. *Cf. United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) ("The government's proof need not exclude every possible hypothesis of innocence." (quoting *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997))).

Here, the government presented evidence of Tien's persistent and eager willingness to accept the agents' invitations. The persistent, persevering nature of his willingness is important in this case, as over seven months passed between the first time Brady contacted Tien and the occurrence of the conduct resulting in the first charges. While an extended time between inducement and conduct usually weighs against a finding of predisposition, for most of that one-year period Tien and either Sullivan or Brady were in contact on approximately a weekly basis, and often more frequently, and at no point did Tien express any hesitancy or reject an

7

invitation for a green-card deal.   Tien was neither passive nor apprehensive.   Tien and the agents each contributed to the planning for the green-card scheme, which was developed through communication at regular intervals, and throughout, Tien was ever eager to involve new clients.

In contrast, the cases that Tien cites—in which long periods of time pass between inducement and alleged criminal acts and the government thus fails to present sufficient evidence of predisposition—involve defendants who over many months repeatedly rejected government propositions to engage in criminal behavior.   *See Jacobson*, 503 U.S. at 546, 550 (government mailed defendant questionnaires and free-speech propaganda regarding sexual expression and collected information from defendant indicating his interest in youthful homosexual materials, but government did not offer to sell defendant illicit materials until it had tried to pique his interest for 26 months); *Sherman v. United States*, 356 U.S. 369, 373 (1958) (defendant rejected and evaded multiple propositions by informant to sell drugs before finally acquiescing).

Tien also argues there was no evidence that he raised the topic of selling green cards, but the government need not make such a showing.   A defendant's ready response to a government agent's proposition may show the defendant's predisposition, even where the government agent, rather than the defendant, first broaches the subject of the illegal scheme.   *See Jacobson*, 503 U.S. at 549-50 ("[W]here the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition.").

Considering the timeline of contacts and meetings among Tien and government agents, Tien's eager entrance into the green-card scheme, the evidence of Tien's knowledge of green-card prices, and his ready list of customers, there was sufficient evidence for a rational juror to

8

determine beyond a reasonable doubt that Tien was predisposed to commit the charged bribery offenses.

### IV. Tien's Request for Jury Instruction on Lesser Included Illegal Gratuity Charge

In denying Tien's request for an instruction on the offense of giving an illegal gratuity, the district court stated that "there is no evidence in the record that would permit the jury to conclude that this was anything other than a quid pro quo." J.A. at 104.

We review a district court's denial of a request for a jury instruction on a lesser included offense for abuse of discretion. *See United States v. Garcia Abreu*, 342 F.3d 183, 188-89 (2d Cir. 2003). "[A] criminal defendant is entitled to a lesser included offense instruction if the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater." *Garcia Abreu*, 342 F.3d at 189 (quotation omitted). Although defendants are ordinarily entitled to a lesser-included-offense instruction, such an instruction "is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses." *United States v. Busic*, 592 F.2d 13, 24 (2d Cir. 1978) (quotation omitted).

The bribery statute under which Tien was charged and convicted, 18 U.S.C. § 201(b)(1)(A), prohibits any person from "directly or indirectly, corruptly giv[ing], offer[ing] or promis[ing] anything of value to any public official . . . with intent . . . to influence any official act." The gratuity statute, 18 U.S.C. § 201(c)(1)(A), makes it illegal to "directly or indirectly give[], offer[], or promise[] anything of value to any public official . . . for or because of any official act performed or to be performed." Our case law explains that an illegal gratuity is a

9

lesser-included offense of bribery that lacks bribery's "corrupt intent" element—in other words, bribery requires that the defendant specifically intend a *quid pro quo*, while an illegal gratuity does not. *See United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002). This court has also explained that "[t]he offense of giving a gratuity was designed primarily to apply to situations where payment is not made until after official action is taken and the element of a corrupt bargain is absent or unprovable." *United States v. Harary*, 457 F.2d 471, 476 n.11 (2d Cir. 1972). On appeal, Tien must therefore point to some evidence that creates a factual issue as to whether Tien's payments were given as rewards for issuing green cards and not given in exchange for green cards.

Tien argues that the language of the illegal-gratuity statute covers situations in which payment is made to reward future acts. While the statute does mention acts "to be performed," logic dictates that a defendant's knowledge that an official act will be done regardless of his payment is an essential difference between a reward and a *quid pro quo*. Tien points to no evidence by which the jury could have concluded that he knew the government was going to issue green cards to his clients and sought to reward government agents for doing so, as opposed to concluding that Tien paid government officials in exchange for their issuing green cards to his clients.

Furthermore, the cases Tien cites are unpersuasive. In *United States v. Zacher*, 586 F.2d 912 (2d Cir. 1978), involving bribery of a public official, this court reversed a conviction of a nursing-home operator who charged private fees over and above Medicaid compensation rates. The court reasoned that the nursing-home operator did not have the ultimate authority to determine his patients' eligibility for Medicaid, and thus the supplemental payments his patients made to him could not have corruptly influenced an official government act. *Id.* at 916. That case, however,

10

did not involve the distinction between an illegal gratuity paid to a government agent and a bribe paid to a government agent; rather it turned on the defendant's lack of authority to influence government acts. *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979), another case cited by Tien, similarly did not distinguish between a reward and a *quid pro quo*. Instead it held that a payment made by a laboratory to a doctor who referred a specimen to the laboratory—after the laboratory had received a fee from a government agency—could not constitute an illegal kickback because "there was no outstanding restriction on what the lab could do with the money once it received it." *Id.* at 1054. Here, in contrast, it is undisputed that Tien made payments to a government official, and Tien argues only that a jury could have found that his payments were a reward rather than a *quid pro quo*. Tien neither cites helpful case law nor points to evidence indicating that his payments were rewards rather than *quid pro quo*. He fails to show that the district court abused its discretion in denying his request for an instruction on giving an illegal gratuity.

## V. Issues Raised in Tien's *Pro Se* Motions and *Pro Se* Appellate Brief

The district court did not abuse its discretion in denying Tien's post-conviction motions because (1) it was not required to consider pro se submissions from a represented defendant; (2) the motion to dismiss the indictment was untimely and rendered harmless by the guilty verdict; and (3) Tien was not entitled to discovery because the right to discovery for a § 2255 petition arises only after the petition is filed, and he has never filed one. Tien's *Brady* and/or *Giglio* claims are conclusory and unsupported by the record, and if they require further factual development, Tien can raise them in a § 2255 petition. Finally, Tien's claim that he was absent for jury selection is belied by the record.

Tien's argument that on any remand his case should be assigned to a different judge is moot.   We have considered all of Tien's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

12