**UNITED STATES of America,
Appellee,**

v.

**Rafael Garcia ABREU, Defendant–
Appellant.**

**Docket No. 02–1164.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 2002.

Decided Sept. 2, 2003.

Paul Morris, Law Offices of Paul Morris, P.A., Miami, Florida, for Defendant–Appellant.

Mark A. Racanelli, Assistant United States Attorney, New York, New York (James B. Comey, United States Attorney, Gary Stein, Assistant United States Attorney, Southern District of New York, New York, New York, of counsel), for Appellee.

Before: VAN GRAAFEILAND, CARDAMONE, and JACOBS, Circuit Judges.

CARDAMONE, Circuit Judge.

At the heart of this appeal lies the question of whether defendant knew that a container in his bedroom held bricks of cocaine. He took the stand and denied knowledge of this critical fact, perhaps believing with the poet that "ignorance is bliss."[1] The government, required to prove defendant's knowledge to convict him of the crime for which he was on trial, and in the face of his denial of actual knowledge, sought a conscious avoidance charge from the trial judge. After the jury heard the charge, defendant's conviction at its hands illustrates that feigned ignorance, at least in this case, is not innocence.

After a police search of defendant's bedroom uncovered over 6.5 kilograms of low-purity cocaine hidden inside a steamer trunk, Rafael Abreu (defendant or appellant) was charged in a one count indictment with distribution and possession with intent to distribute cocaine. At his jury trial, which was held in the United States District Court for the Southern District of New York before then District Court Judge (now Court of Appeals Judge) Barrington D. Parker, Jr., Abreu asserted that the trunk belonged to his son Ruben and denied any knowledge of its contents.

On this appeal from his judgment of conviction entered on February 28, 2002, Abreu challenges two of the trial court's jury instructions, contending, first, that the conscious avoidance theory of knowledge instruction should not have been given, and, second, that the trial court should have instructed the jury on the lesser included offense of cocaine possession. In addition, defendant challenges an evidentiary ruling that precluded him from testifying about a comment made by his son Ruben several weeks before defendant's arrest.

Because the evidence warranted the conscious avoidance charge and it was not an abuse of discretion to refuse to give the lesser possession charge, and the evidentiary argument is devoid of merit, we affirm.

## BACKGROUND

### A. Defendant's Arrest

Defendant Abreu was arrested in July 2000 as a result of police surveillance of another son, José Abreu. On July 11, José was apprehended with $800,000 in cash. Although the money was seized, José himself was released, and not charged with any crime. The police, however, continued their surveillance of him. In the course of that surveillance, a green van with New Jersey license plates attracted the investigators' attention. The van was traced to a

---

1. Yet, ah! why should they know their fate,
 Since sorrow never comes too late,
 And happiness too swiftly flies?
 Thought would destroy their paradise.
 No more;—where ignorance is bliss,
 'Tis folly to be wise.'
 Thomas Gray, *On A Distant Prospect Of Eton College, in* The Poetical Works of Thomas Gray 10, 16–17 (Rev. John Mitford ed., Boston, Little, Brown & Co. 1863).

house in Yonkers, New York, later identified as defendant Rafael Abreu's residence. On July 25, 2000 police followed the van from Yonkers to an underground parking garage in Manhattan, where the officers stopped it. The investigators approached the two men inside—defendant, who was driving, and his passenger—and, after obtaining defendant's consent, searched the van and recovered a black suitcase with $499,920 in cash.

Defendant was placed under arrest and transported to police barracks in Hawthorne, New York. Abreu admitted at the police station that he had additional large sums of cash at home and consented to a search of his residence. Investigators permitted defendant to accompany them during the search. Upon arrival at his home, Abreu immediately lead the police to the master bedroom and pointed to a bag inside a closet. One officer escorted defendant to the living room, while the other officers continued to search the bedroom. They found $489,960 in the bag pointed out to them, an additional $79,880 in another bag in the same closet, and $22,500 in a dresser drawer.

Continuing their search, investigators opened a steamer trunk that was next to the bedroom closet. There, inside three bags placed one inside another, they discovered seven bricks of compressed white powder wrapped in brown cellophane paper. Subsequent tests of the powder indicated the presence of cocaine of relatively low—10 to 13 percent—purity.

### B. Defendant's Trial

Defendant was charged with one count of distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The indictment also cited 18 U.S.C. § 2, thus invoking the aiding and abetting theory of criminal liability. The jury trial on these charges was held in June 2001. The government's case consisted primarily of the police officers' testimony regarding the investigation that lead to defendant's arrest, the circumstances surrounding the arrest, and the search of defendant's home. The prosecution also presented the testimony of a forensic scientist who conducted laboratory tests on the recovered white powder.

Defendant took the stand and testified in his own defense. His description of the circumstances of his arrest was generally consistent with that given by the police. But, he differed when he averred the arresting officers had repeatedly assured him that he would be released as soon as they seized the cash from his car and his house. According to Abreu, it was these assurances, bolstered by the recent experience of his son José, that induced him to consent to the searches of his car and residence.

Defendant's explanation for the substantial quantity of cash found in his car and home was that he had received it from his son José. His son had obtained it, defendant said, from some "bankers in Upper Manhattan who were engaged in gambling pools." Abreu stated that the cash was in his possession because it was his job to prepare it—that is, for a fee, he was to count and organize it and then return it to José. Defendant maintained that when he had asked José where the money had come from, he had been told that it was proceeds of illegal gambling. Although defendant admitted to having some doubts regarding the true origin of the cash, he insisted that he was only interested in his money-counting fees and therefore chose not to ask any further questions.

Defendant declared, in addition, that the investigators' discovery of cocaine in the steamer trunk came as a complete surprise to him. He stated that the trunk where

the cocaine was found belonged to his son Ruben, who had stayed in Abreu's house for five or six days shortly before defendant's July 25 arrest. Although admitting he had looked inside the trunk when his family was moving to its current residence in Yonkers, he averred he had not checked its contents either during or after his son Ruben's most recent stay at his home.

Abreu further testified he had not had any contact with Ruben since July 23, 2000. Defendant continued by describing a confrontation he had with Ruben two weeks prior to his arrest, precipitated by Ruben's showing him a brick-shaped package and explaining that the package contained drugs. Abreu swore he told Ruben to get rid of the drugs, and that Ruben took them into the bathroom and appeared to have flushed them down the toilet.

It was in explaining this confrontation with Ruben that defendant sought to introduce testimony regarding Ruben's statement that the drugs he had shown his father were "beat," that he had been deceived by their seller and would attempt to get his money back. The trial judge excluded this testimony as inadmissible hearsay. Nonetheless, during defendant's cross-examination—in response to the prosecutor's question whether Ruben had shown him a brick of cocaine—he stated, "Yes, because he supposedly had been deceived with it. They had given it to him. It supposedly was cocaine, but it wasn't cocaine." The judge denied the prosecutor's request to strike the answer. Thus, by this response, defendant was able to get his son's comment before the jury.

At the close of the trial, the prosecution requested that the judge instruct the jury on the conscious avoidance theory of knowledge. Over defendant's objection, the request was granted and the trial judge instructed the jury as follows

If you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth, then the requirement that he have acted knowingly may be satisfied. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.

If you find that the defendant was aware of a high probability that a fact was so, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed the fact was not so, then he may not have acted knowingly with respect to whatever charge you are considering.

Defendant asked that the jury be instructed on the lesser included offense of cocaine possession. That request was denied. The district court ultimately instructed the jury on possession with intent to distribute, as well as on aiding and abetting in distribution and in possession with intent to distribute. After the jury found defendant guilty, he unsuccessfully moved for a new trial pursuant to Fed. R.Crim.P. 33. This appeal followed.

## DISCUSSION

### I Conscious Avoidance Instruction

■ Appellant first challenges the trial judge's decision to instruct the jury on the conscious avoidance theory of knowledge. We find no error in this ruling.

■ The conscious avoidance instruction allows a jury to find that a defendant had culpable knowledge of a fact when the evidence suggests that the defendant may have suspected the fact's existence but deliberately chose to remain ignorant. *See United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir.2000); *United States v. Eltay-*

**188**

*ib*, 88 F.3d 157, 170 (2d Cir.1996). Obviously one can "know" some fact of which one is less than absolutely certain. So to act with knowledge in the law does not mean that positive knowledge must be shown in all cases. If a jury finds beyond a reasonable doubt that a defendant acts with an awareness of the high probability of the existence of the fact in question—here the presence of drugs in the steamer trunk—a jury may find that such person, here defendant, had knowledge of it. *See United States v. Reyes*, 302 F.3d 48, 54–55 (2d Cir.2002).

■ A trial judge may properly give the conscious avoidance instruction if two conditions are met. First, the defendant must assert that he lacks some specific aspect of knowledge required to be proved to convict him of the crime charged. *See Ferrarini*, 219 F.3d at 154. Second, there must be a factual basis for the charge—*i.e.*, the evidence must allow a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact. *Id.*

Both requirements are clearly met in this case. First, appellant denied knowledge of the cocaine's presence in his bedroom. Second, there was a sufficient factual predicate for the charge. Specifically, appellant himself testified that he had accepted the trunk from his son Ruben and that he knew Ruben was involved with drugs. From this testimony, as well as from the fact that appellant stored the trunk at the foot of his bed in his bedroom, where he also kept large amounts of cash, the jury could reasonably have inferred Abreu suspected the trunk contained drugs, but consciously and deliberately chose not to check its contents to avoid finding contraband.

Abreu's argument that the conscious avoidance instruction permitted the jury to punish him for simple negligence lacks merit. First, the trial judge expressly admonished the jury that guilty knowledge may not be established by demonstrating that the defendant was "merely negligent, foolish, or mistaken." Second, Abreu's argument is premised on the common misconception that the conscious avoidance theory allows the prosecution to establish knowledge by proving only that the defendant should have known of a certain fact, even if he did not actually know it. That is not the case. True, the state of mind necessary to establish conscious avoidance is something less than complete certainty. But it is not enough that the defendant should have known the particular fact; the conscious avoidance theory permits a jury to impute knowledge only if a defendant disregarded a fact despite his actual, subjective "awareness of the *high probability* of [its] existence." *Reyes*, 302 F.3d at 54 (emphasis added).

For Abreu's jury to conclude that he knew of the cocaine based on the conscious avoidance theory, the jury had to find that, based on what Abreu knew about his son Ruben and the origin of the trunk, Abreu disregarded the high probability of drugs being in the trunk, even if he did not personally see them and even if Ruben did not tell him that the drugs were there. Thus, with the conscious avoidance charge, Abreu's conviction means the jury did not believe Abreu actually thought the trunk contained no drugs.

## II Lesser Included Offense

■ Appellant's second challenge to the trial court's jury charge is that it erroneously denied his request for an instruction on the lesser included offense of cocaine possession without intent to distribute.

We cannot say that this denial was an abuse of discretion.

■ Fed.R.Crim.P. 31(c) permits a jury to return a verdict of guilty as to "an offense necessarily included in the offense charged." Pursuant to this rule, a criminal defendant is entitled to a lesser included offense instruction if "the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater." *United States v. Diaz*, 176 F.3d 52, 101 (2d Cir.1999); *see also United States v. Dhinsa*, 243 F.3d 635, 674 (2d Cir.2001) ("Rule 31(c) permits the defendant to request a lesser included offense instruction if, based on the evidence at trial, a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater."). Whether the evidence justifies a lesser included offense charge is a decision committed to the discretion of the trial judge. *United States v. Busic*, 592 F.2d 13, 25 (2d Cir. 1978).

Abreu contends the conscious avoidance instruction enabled the jury to convict him of cocaine possession, while at the same time acquitting him of possession with intent to distribute. Indeed, the conscious avoidance instruction permitted a finding of culpable knowledge even if the jury believed defendant's testimony concerning the cocaine's origin, so long as it also found that defendant believed Ruben had probably placed some drugs in the trunk. Had the jury made these findings, appellant argues, it could have also concluded that he did not know the drugs he was safe-keeping were intended for distribution rather than for Ruben's personal use or to be discarded.

The trial evidence as a whole, however, does not support appellant's position. Admittedly, Abreu did not expressly state that he believed Ruben was a drug dealer, only that he thought Ruben was "involved with drugs"—a phrase that in a different context could have meant only the use of drugs. Appellant himself testified, however, that he had previously seen Ruben with a brick of cocaine, a quantity suggesting not mere personal use, but a commercial narcotics transaction. Further, nothing in the evidence indicated that Ruben had in fact ever been a drug user or that appellant had any reason to believe that to be the case.

Under these circumstances, the trial judge had the discretion to conclude that a rational juror who found knowledge on the conscious avoidance theory could not have found that defendant thought Ruben's drugs were intended for Ruben's own personal use. Nor was it an abuse of discretion for the trial court to refuse to credit the proposition that the jury could have found defendant intended to destroy Ruben's drugs at a later date. Contrary to defendant's contention, a reasonable juror would be extremely unlikely to believe that Abreu continued to keep the drugs he intended to destroy in his own bedroom, instead of destroying them as soon as he began to suspect their presence.

In sum, the evidence presented at trial did not reasonably support a conviction of cocaine possession coupled with an acquittal of possession with intent to distribute. Accordingly, the trial court did not abuse its discretion by refusing to give the lesser included offense charge.

## III Exclusion of Testimony

■ Appellant's final challenge is to the trial judge's decision to exclude as inadmissible hearsay proffered testimony regarding statements Ruben made when he showed appellant the brick of cocaine. In particular, Abreu wanted to testify that Ruben told him that the drugs were "beat," that the seller had deceived him,

and that he would try to get his money back.

 We review a trial judge's evidentiary rulings for abuse of discretion. *Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir.2002). Additionally, we will not order a new trial because of an erroneous evidentiary ruling if we conclude that the error was harmless. *Id.* Here, there was no error in the exclusion of the proffered testimony, and, even if the challenged ruling were erroneous, the error would have been harmless.

As an initial matter, we reject defendant's assertion that the proffered statements were not hearsay because they were not offered for their truth. *See* Fed. R.Evid. 801(c). He did not seek to introduce these statements for the non-hearsay purpose of establishing his own state of mind—*i.e.*, his belief that Ruben was involved in drug dealing. Instead, appellant urges that the proffered statements supported his assertion that the seized cocaine belonged to Ruben because, first, the statements showed Ruben's actual involvement in the drug trade, and, second, because the seized cocaine was also of low quality, consistent with Ruben's complaint about the cocaine he was showing his father. The jury could not have drawn these inferences unless it found the proffered statements to be true—that is, unless it believed Ruben had bought the cocaine in a drug deal and that it was of poor quality. Thus, the proffered statements were clearly hearsay.

 Moreover, the trial judge correctly rejected appellant's argument that Ruben's statements constituted admissible statements against interest under Fed. R.Evid. 804(b)(3). Fed.R.Evid. 804(b)(3) provides that a "statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circum-

stances clearly indicate the trustworthiness of the statement." In the case at hand, Ruben's proffered statements exposed Ruben to criminal liability and were offered to exculpate Abreu. Yet there were no corroborating circumstances to indicate their trustworthiness. To the contrary, appellant's story regarding Ruben's conduct was self-serving and unsupported by any other proof in the record.

The hearsay exception for statements against interest was also inapplicable because appellant did not demonstrate that Ruben was unavailable to testify. Fed. R.Evid. 804 expressly requires declarant's unavailability as a witness, which is established if the declarant

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

Fed.R.Evid. 804(a). Although appellant stated that his son Ruben was in the Dominican Republic, there was no evidence that he had made any efforts or taken any steps to procure his son's attendance or testimony at trial.

Appellant's reliance on the residual hearsay exception under Fed.R.Evid. 807 is similarly misplaced. Under Fed.R.Evid. 807, hearsay statements not covered by any specific hearsay exception may be admitted only if accompanied by "equivalent circumstantial guarantees of trustworthiness." Abreu's proffered testimony was unreliable for the reasons discussed above, that is to say, because it was self-serving and uncorroborated.

■ Finally, even were the district court's ruling to exclude the testimony error, the error would have been harmless. During his cross-examination appellant ultimately was able to convey to the jury most of the information that the trial court had ruled inadmissible. He answered a cross-examination question by volunteering that Ruben had been deceived about the substance given to him because "it wasn't cocaine." As the trial judge denied the prosecution's motion to strike that answer, the jury not only heard the gist of the excluded testimony but was also allowed to consider it in its deliberations.

## CONCLUSION

Accordingly, for the foregoing reasons, the judgment is affirmed.