UNITED STATES of America,
Appellee,

v.

Michael MCCLAIN, also known as "Michael MacClane"; Marianne Curtis; Louis Frechette; Roy Thornton, Defendants,

Robert Martins, also known as "R. Martins", also known as "R Martin", Antonio Guastella, also known as Nino Anthony Guastella, also known as Anthony Costelli, Defendants–Appellants.

Nos. 02–1093(L), 02–1122(CON).

United States Court of Appeals, Second Circuit.

Sept. 3, 2004.

Alexei Schacht, Nalven & Schacht, Astoria, NY, for Appellant Martins.

Bobbi C. Sternheim, New York, NY, for Appellant Guastella.

Gary Stein, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, on the brief; Michael Schachter, Assistant United States Attorney), New York, NY, for Appellee, of counsel.

Present: SACK, SOTOMAYOR, and RAGGI, Circuit Judges.

Defendants-appellants Robert Martins and Antonio Guastella appeal from a judgment of conviction entered on February 11, 2002, in the United States District Court for the Southern District of New York (Scheindlin, J.), following a jury trial. Both defendants were convicted of money laundering, multiple counts of wire fraud, and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 1957, 1343, and 2314, respectively, as well as conspiracy to commit wire fraud and money laundering, in violation of 18 U.S.C. §§ 371 and 1956(h), respectively. The government established at trial that Martins and Guastella orchestrated an elaborate scheme to defraud investors of millions of dollars by posing as promoters of a purported high-yield investment program that promised massive returns within a short period of time. Defendants created a series of fictitious European banks from which investors were to "lease" funds to invest, usually for a leasing fee of around $35,000. In reality, no funds were made available to invest and the investment programs into which the "leased" funds were purportedly placed were nonexistent. Martins and Guastella pocketed the leasing fees and eventually defrauded victims out of approximately $16.7 million. Both defendants now raise several challenges to their convictions and sentencing. All of their contentions are disposed of below, with the exception of their argument that the admission of their co-conspirators' plea allocutions violated the Confrontation Clause, which issue is addressed in a previously issued opinion. *United States v. McClain*, 377 F.3d 219 (2d Cir.2004).

■ Martins first argues that there was insufficient evidence to support his convictions for fraud and money laundering because the government failed to prove that Martins had knowledge of the fraudulent nature of the scheme. Assessing the evidence "in the light most favorable to the government," *United States v. Berger*, 224 F.3d 107, 116 (2d Cir.2000), and drawing all inferences in the government's favor, *see United States v. Cruz*, 363 F.3d 187, 197 (2d Cir.2004), however, we find that there is ample evidence from which a rational juror could infer that Martins was well aware that the victims were being defrauded. The government presented evidence that Martins helped Guastella choose a name for one of the fictitious banks; obtained stationery with the letterhead of another fictitious bank from a print shop in Las Vegas; and reassured suspicious victims that the banks were in fact reputable financial institutions. This evidence was more than sufficient to allow the inference that Martins was aware that the banks did not exist and that the investment program was fraudulent.

■ Second, Martins contends that the district court committed reversible error in allowing the government to introduce an email sent by one of the victims and forwarded to Martins, in which an anonymous author alleged that the banks used by Martins and Guastella were nonexistent and warned the victim to avoid the scam. We review the district court's ruling on

admissibility for abuse of discretion. *See United States v. Abreu*, 342 F.3d 183, 190 (2d Cir.2003). Although Martins asserts that the email was inadmissible hearsay, the email was introduced not for its truth but as evidence of Martins' state of mind. Because Martins argued at trial that he was unaware that the banks and the investment program did not exist, the email was relevant to rebut his claim. Moreover, the district court did not abuse its discretion in ruling that the email's probative value outweighed its prejudicial effect, and its limiting instruction to the jury mitigated any prejudice.

■ Finally, Martins challenges his sentence with respect to his wire fraud and money laundering convictions on the ground that the district court erroneously applied organizer or leader enhancements in calculating the offense level for each conviction. *See* United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1 (1997). We review the district court's factual determination that the defendant was a leader or manager for clear error, *see United States v. Szur*, 289 F.3d 200, 218 (2d Cir. 2002), and find none here. With respect to Martins' wire fraud conviction, the court found that Martins supervised at least eight subordinates and applied a four-level upward adjustment for being an organizer or leader of a criminal scheme involving five or more participants. Because the evidence showed that Martins actively supervised and instructed the other participants on maintaining the Smith Barney account and on interacting with the victims, the district court did not err in applying the enhancement. With respect to Martins' money laundering conviction, the district court correctly applied a three-level enhancement for being a manager or supervisor of money laundering activity that was extensive. The evidence demonstrated that Martins directed various individuals to open accounts into which the victims' payments were deposited.

■ Guastella challenges his sentence on several grounds, and in a separate *pro se* brief, challenges his conviction. Guastella first contends that the district court erred in failing to group his wire fraud and money laundering offenses for purposes of the sentencing calculation. This argument is misplaced. The district court correctly applied the 1997 version of the Guidelines, which we have held does not group the offenses, *see United States v. Napoli*, 179 F.3d 1, 7–8 (2d Cir.1999), in calculating the sentence, because the 2001 version would have resulted in a higher offense level and resulting sentence (even though the money laundering and wire fraud offenses would be grouped). *See* U.S.S.G. § 1B1.11(a), (b)(1) (2001) (directing court to use version in effect at time of sentencing, unless so doing would result in sentence higher than that prescribed by version in effect at the time of the offense). The court was therefore required to apply the 1997 version exclusively, with the exception of any subsequent clarifying amendments in later versions of the Guidelines, which may be applied retroactively. *See id.* § 1B1.11(b)(2) (1997). While the 2001 version of the Guidelines contained amendments prescribing that money laundering offenses should be grouped with the underlying offense from which the proceeds were obtained, *see id.* § 2S1.1(a)(1) & cmt. 6 (2001), this amendment was substantive, not clarifying, *see United States v. Sabbeth*, 277 F.3d 94, 99 (2d Cir.2002), and therefore may not be applied retroactively. The court correctly refused to group the money laundering and wire fraud offenses.

■ Second, Guastella asserts that the court erred in imposing a two-level enhancement for abusing a position of trust that facilitated the commission of the offense, *see* U.S.S.G. § 3B1.3, because his

victims did not believe that they had a trust-based relationship with him. The district court's determination that a defendant occupied a position of trust from the perspective of the victim is reviewed *de novo. See United States v. Hussey*, 254 F.3d 428, 431 (2d Cir.2001). The court correctly found that Guastella occupied a position of trust because he led his victims to believe that he was a representative of a financial institution by sending them letters on what appeared to be bank stationery and posing as a European bank official. The victims therefore believed that Guastella had a corresponding fiduciary duty with respect to the victims' funds. *See id.* at 431–32. Although Guastella relies on his assertion that he never met the victims or provided investment advice, these facts, even if true, are irrelevant in the face of Guastella's representation that he was part of a financial institution.

■ Third, Guastella argues that he should not have received a two-level enhancement for obstruction of justice based on his perjured testimony at trial because he did not have the specific intent to obstruct justice, as required by U.S.S.G. § 3C1.1. The crux of Guastella's argument is that his testimony that he did not defraud anyone was not perjurious because he honestly believed that his actions were lawful. The district court correctly applied the enhancement, however, because the jury rejected any assertion that Guastella did not believe that his actions were fraudulent when it convicted him of wire fraud. "Where, as here, the defendant's testimony relates to an essential element of his offense ... the judgment of conviction necessarily constitutes a finding that the contested testimony was false." *United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991) (per curiam). Given the many instances in which Guastella's testimony differed from the evidence, the district court's finding that Guastella intentionally perjured himself in order to obstruct justice is not clearly erroneous.

■ Fourth, Guastella argues that the two-level enhancement to his money laundering offense level was unwarranted because he did not believe that the funds were the proceeds of illegal activities. *See* U.S.S.G. § 2S1.2(b)(1)(B). In order to convict him of money laundering, however, the jury had to find that Guastella knew that the funds he laundered were derived from illegal activity. The district court therefore did not err in imposing the enhancement.

■ Fifth, Guastella argues *pro se* that he did not receive effective assistance of counsel at his trial. We decline to address this argument on direct appeal, however, as Guastella makes a number of factual assertions about his counsel's performance that would be better addressed in the district court in the first instance. *See Massaro v. United States*, 538 U.S. 500, 504–05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Guastella may bring his ineffective assistance claim in the context of a proceeding under 28 U.S.C. § 2255 in the district court, which will allow the court to address all of his collateral claims at once. *See United States v. Doe*, 365 F.3d 150, 154 (2d Cir.2004).

Sixth, Guastella also argues *pro se* that the government took several actions that constituted prosecutorial misconduct. He asserts that the government suborned perjury but does not establish that any witness actually committed perjury or that the government knew or should have known about the alleged perjury. *See United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir.2001). Guastella also claims that the government withheld exculpatory material "from the jury," but does not claim that the government withheld any material from the defense. *See Brady v.*

*Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finally, Guastella argues that the government improperly called him a liar during its closing argument, but the government's argument that Guastella lied on the stand was clearly proper, given that Guastella's credibility was at issue.

■ Seventh, Guastella contends that the district judge was biased against him. Guastella states that the judge's looks and innuendos indicated her bias, but can point to no evidence indicating that the judge's alleged bias was so obvious that it "became a factor in the determination of the jury." *United States v. Salameh,* 152 F.3d 88, 128 (2d Cir.1998) (internal quotation marks omitted).

■ Finally, Guastella contends that there was insufficient evidence to support his convictions. This argument is meritless in light of the extensive evidence—much of it recovered from Guastella's residence—that Guastella created the structures that he and Martins used as the fictitious banks, set up accounts into which to place the proceeds of the scheme, and took steps to prevent the victims from discovering the fraudulent nature of the scheme.

Except as noted, the judgment of the district court is AFFIRMED for the reasons stated in this summary order and in the court's prior opinion *United States v. McClain,* 377 F.3d 219 (2d Cir.2004). Guastella's challenge to his conviction based on ineffective assistance of counsel is DISMISSED without prejudice to his asserting it in a motion pursuant to 28 U.S.C. § 2255. The mandate in this case will be held pending the Supreme Court's decisions in *United States v. Booker,* No. 04–104, and *United States v. Fanfan,* No. 04–105, 2004 WL 2331491 (U.S. October 4, 2004). Should any party believe there is a need for the district court to exercise juris-

diction prior to the Supreme Court's decisions, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not consider the waiver or substance of any issue concerning defendants' sentences until after the Supreme Court's decisions in *Booker* and *Fanfan.* In that regard, the parties will have until fourteen days following the Supreme Court's decisions to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*