**UNITED STATES of America,**
**Appellee,**

v.

**Ashar IQBAL, Defendant–Appellant.**

**No. 04–0521–CR.**

United States Court of Appeals,
Second Circuit.

Dec. 10, 2004.

Roger Bennett Adler, New York, NY, for Appellant.

Emily Berger, Michael J. Ramos, Assistant United States Attorneys (Roslynn R. Mauskopf, United States Attorney, Eastern District of New York), New York, NY, for Appellee.

PRESENT: FEINBERG,
CARDAMONE, and B.D. PARKER,
Circuit Judges.

### SUMMARY ORDER

Ashar Iqbal appeals from a judgment of the United States District Court for the Eastern District of New York (Gershon, *J.*). Following his conviction for possession of, and conspiracy to possess, heroin with intent to distribute, he was sentenced principally to 78 months' imprisonment. *See* 21 U.S.C. §§ 841 and 846. On appeal, he challenges the legal sufficiency of the evidence, various evidentiary rulings and jury instructions by the trial court as well as the drug amount that generated his offense level. For the reasons set forth below, we affirm.

The evidence adduced at trial established the following: Special Agent Billivan Johnson, an undercovery FBI agent who was investigating a suspected heroin dealer named Murad Khan ("Khan,") presented himself to Khan as a buyer, and met with him on five separate occasions at a diner in Brooklyn, New York between October and December 2000, for the purpose of purchasing heroin. On three of these occasions, Iqbal drove Khan to meetings, and on one of the three occasions Iqbal actually attended the meeting. Iqbal was arrested on November 7, 2001 and at the time of his arrest admitted that he accompanied Khan to the diner on October 12, 2000, December 7, 2000, and December 14, 2000, and that he knew the money obtained by Khan at the December 7 and December 14 meetings was payment for drugs. At trial, however, Iqbal denied knowing at the time the meetings took place that they involved drugs. Although at the time of his arrest, Iqbal admitted that he attended a December 14, 2000 meeting knowing that it involved a drug transaction, at trial he testified that he was not aware of the nature of the December 14 meeting until Khan and Johnson started talking about grams and money. The jury returned a guilty verdict.

Iqbal's Presentence Report calculated that he was responsible for 429 net grams of heroin, and recommended adding two offense levels for obstruction of justice for his false trial testimony. *See* USSG § 3C1.1. Iqbal objected to both the drug calculation and the obstruction enhancement, and also argued that he was entitled to a role reduction and qualified for safety-valve relief. The Court granted the role reduction, denied safety valve relief, and otherwise followed the PSR recommendations.

On appeal, Iqbal contends that the evidence adduced at trial was insufficient to support his conviction on the substantive as well as the conspiracy counts. This contention carries with it a heavy burden. "A defendant must prove that, viewing all of the evidence in the light most favorable to the government, no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Aleskerova,* 300

F.3d 286, 292 (2d Cir.2002) (internal quotation marks omitted). He has not met that burden.

■ With respect to the substantive count, the government sought to establish that Iqbal, by virtue of his association with Khan, who had engaged in drug transactions with the undercover agent, was in constructive possession of the heroin. This theory required the government to prove that Iqbal had "dominion and control" over the heroin. *See United States v. Gordils*, 982 F.2d 64, 71 (2d Cir.1992). We believe the government succeeded. Iqbal accompanied Khan to the transactions, and even participated (though he claims unwittingly) in one of them. Moreover, he admitted upon his arrest to knowing that Khan was dealing drugs at these meetings but then contradicted himself when testifying at trial. The jury could properly infer from these facts that Iqbal was permitted to accompany Khan to the deals because he was a "trusted member[ ] of [Khan's] operation." *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir.1992). Moreover, the fact that Iqbal drove Khan (while Khan was carrying drugs) to meetings, at least one of which Iqbal knew would involve drug transactions, is potent evidence that Iqbal exerted "dominion and control" over the drugs. *See Chalmers v. Mitchell*, 73 F.3d 1262, 1272 (2d Cir.1996) (where defendant exercised "dominion and control" over space in which drugs were found, jury could properly infer that defendant exercised "dominion and control" over drugs); *United States v. Eltayib*, 88 F.3d 157, 172 (2d Cir.1996) (chief engineer of cargo vessel exercised "dominion and control" over cocaine payload because officers of ship have dominion and control over ship's cargo). Accordingly, we hold that there was sufficient evidence to support Iqbal's conviction for possession of heroin with intent to distribute.

■ As to the conspiracy count, the evidence is even stronger. Iqbal was present at one of Khan's meetings with the undercover agent and offered to conditionally assist the agent in procuring heroin in the future. His assertion that he could not reasonably have been aware of Khan's unlawful activities before this meeting is belied by his post-arrest statement to police that he knew the money Khan obtained at his earlier meetings with the agent was drug money. On these facts, it was reasonable for the jury to infer that Iqbal knowingly and willfully conspired with Khan to deal drugs.

■ Iqbal claims that the Court erred by refusing to give a "missing witness" charge with respect to Khan, who pleaded guilty prior to trial, had not been sentenced, and informed the Court that he would invoke his Fifth Amendment right against self-incrimination if called upon to testify. A missing witness charge may be appropriate where a party "fails to call a witness whose 'production ... is peculiarly within [its] power.'" *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir.2004) (quoting *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir.1994)). Since Iqbal did not request such a charge, we review the Court's failure to so charge for plain error. *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Here, the Court adequately examined Khan and his counsel and satisfied itself that Khan's invocation of his Fifth Amendment privilege was in good faith. The cooperation agreement, in which Khan agrees to testify, does not constitute a waiver of his Fifth Amendment right against self-incrimination but rather merely states the consequences flowing from the invocation of that privilege. Since Khan's cooperation agreement did not contain a waiver of his Fifth Amendment rights, the government was in

no better place than Iqbal himself to compel Khan's testimony. Accordingly, Iqbal has not demonstrated that the Court's failure to give a missing witness charge constituted plain error.

■ Iqbal argues that the District Court's "conscious avoidance" charge—which provided an alternate basis from which to prove knowledge and criminal intent—was erroneous because the record did not provide the necessary evidentiary foundation for such an instruction. This argument has no merit. A conscious avoidance instruction may be given if (i) the defendant "assert[s] that he lacks some specific aspect of knowledge required to be proved to convict him of the crime charged," and (ii) based on the facts in evidence, "a rational juror [could] conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Abreu,* 342 F.3d 183, 188 (2d Cir.2003).

The evidence amply supports the conscious avoidance charge given by the Court. Iqbal accompanied Khan to three of the drug transactions, went so far as to participate under an assumed name in one of the transactions, and handled the proceeds of another of the transactions after it was consummated. He now claims that he had no idea, until the very last meeting (in which he was duped by Khan into "playing along"), that drugs were involved. These assertions present a classic "conscious avoidance" situation: If the jury did not find that Iqbal had actual knowledge of the nature of the transactions, it could conclude, based on these facts, that he was aware of a high probability that the meetings had to do with drugs and deliberately avoided confronting that probability. Therefore, the conscious avoidance charge was appropriate.

■ With respect to sentencing, Iqbal claims that he was entitled to a two-point offense level reduction (from 28 to 26) because he was responsible only for the amount of drugs (250 grams) exchanged between Khan and the undercover agent at the December 7 meeting rather than the entire 429 grams that were sold by Khan. The District Court rejected this contention and determined that Iqbal was a member of the conspiracy from the time of the first meeting between the undercover agent and Khan, and thus is responsible for the total amount of drugs exchanged between those two at subsequent meetings, whether or not he was actually present. This finding was not clearly erroneous, and the Court did not abuse its discretion in applying the Guidelines to it. *See United States v. Hernandez–Santiago,* 92 F.3d 97, 100 (2d Cir.1996) (standard of review).

Iqbal also contends that since the Court agreed that he was "a minor participant in the conspiracy," an offense level of 26 (more than 100, less than 400 grams) was the appropriate Guidelines level. However, the Court clearly gave defendant "two levels off for a minor role in this conspiracy," which would have put defendant at an offense level of 26 but for a two-point enhancement for obstruction of justice. Therefore, Iqbal's argument on this point is manifestly meritless.

Finally, Iqbal argues that the "obstruction of justice" enhancement was unconstitutionally imposed because it was neither charged in the indictment, nor found by the jury, and thus violated *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We have noted that the "Supreme Court explicitly stated in *Blakely* that '[t]he Federal Guidelines are not before us, and we express no opinion on them.'" *United States v. Mincey,* 380 F.3d 102, 106 (2d Cir.2004) (quoting *Blakely,* —— U.S. at —— n. 9, 124 S.Ct. at

2538 n. 9). Accordingly, until we are "advised ... that the Supreme Court intends to apply *Blakely* to the Guidelines," "we will adhere to the law of this Circuit" with respect to Guidelines sentencing. *Mincey*, 380 F.3d at 106.

We have considered all of Iqbal's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of conviction against him.

However, the mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 and *United States v. Fanfan*, —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004). Should either party believe there is a need for the District Court to exercise jurisdiction prior to the Supreme Court's decision, such party may file a motion in this Court seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the Court will not reconsider those portions of its summary order that address Iqbal's sentence until after the Supreme Court's decision in *Booker* and *Fanfan*. The parties will have until fourteen days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan*.